﻿Citation Nr: AXXXXXXXX
Decision Date: 03/21/19 Archive Date: 03/21/19

DOCKET NO. 181113-1321
DATE: March 21, 2019

ORDER

Entitlement to service connection for a left knee disability is denied.

Entitlement to service connection for a right knee disability is denied.

Entitlement to service connection for left lower extremity radiculopathy secondary to degenerative disc disease of the lumbar spine is denied.

Entitlement to service connection for right lower extremity radiculopathy secondary to degenerative disc disease of the lumbar spine is denied.

Entitlement to service connection for residuals of traumatic brain injury (TBI) is denied.

FINDINGS OF FACT

1. The Veteran does not have a current left knee disability.

2. The Veteran does not have a current right knee disability. 

3. The Veteran does not have a current left lower extremity radiculopathy.

4. . The Veteran does not have a current right lower extremity radiculopathy.

5. Though a head injury in service and a current TBI disability have been conceded, the preponderance of the evidence weighs against a finding that the Veteran has any current TBI residuals that are etiologically related to service.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a left knee disability have not been met. 38 U.S.C. §§ 1110, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2018).

2. The criteria for entitlement to service connection for a right knee disability have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

3. The criteria for entitlement to service connection for a left lower extremity radiculopathy have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309.

4. The criteria for entitlement to service connection for a right lower extremity radiculopathy have not been met. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309. 

5. The criteria for service connection for residuals of a TBI have not been met. 38 U.S.C. §§ 1110, 1117; 38 C.F.R. §§ 3.102, 3.303.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 

The Board notes that the rating decision on appeal was issued in February 2018. In May 2018, the Veteran elected the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

The Veteran selected the higher-level review lane when she submitted the RAMP election form. Accordingly, the August 2018 RAMP rating decision considered the evidence of record as of the date of the RAMP opt-in election receipt on May 10, 2018. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the agency of original jurisdiction (AOJ).

In the August 2018 RAMP decision, the AOJ found that new and relevant evidence was submitted to warrant readjudicating the claim for service connection for the Veteran’s bilateral knee disability. The Board is bound by this favorable finding. AMA, Pub. L. No. 115-55 § 5104A, 131 Stat. 1105, 1106-07. The new and material evidence issue regarding the Veteran’s bilateral knee disability claim has been recharacterized to reflect the applicable evidentiary standard. 84 Fed. Reg. 138, 172, 182 (Jan. 18, 2019) (to be codified at 38 C.F.R. §§ 3.2501(a)(1), 19.2).

Service Connection

Service connection may be granted for disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 5107; 38 C.F.R. § 3.303. The three-element test for service connection requires evidence of: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the in-service disease or injury. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Certain chronic diseases will be presumed related to service if they were shown as chronic (reliably diagnosed) in service; or, if they manifested to a compensable degree within a presumptive period following separation from service; or, if they were noted in service, with continuity of symptomatology since service that is attributable to the chronic disease. 38 U.S.C. §§ 1101, 1112, 1113, 1137; Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013); Fountain v. McDonald, 27 Vet. App. 258 (2015); 38 C.F.R. §§ 3.303, 3.307, 3.309.

The Board has thoroughly reviewed all the evidence in the Veteran’s claims file. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, the evidence submitted by the Veteran or on his behalf. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). The analysis below focuses on the relevant evidence and on what this evidence shows, or fails to show, on the claim. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122, 128 (2000).

1. Entitlement to service connection for a left knee disability

2. Entitlement to service connection for a right knee disability

The AOJ found that the Veteran had an in-service event, including an in-service diagnosis of a knee disability, to include patellofemoral syndrome. The requirements of Shedden element (2), in-service incurrence, have been met. Thus, the question in this case is two-fold: whether there is a current disability, and if so, whether a causal relationship or nexus between said disability and service exists.

The Board notes that Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223 (1992). 

Post service treatment records reflect that in October 2006, the Veteran underwent a knee evaluation at a VAMC, during which she reported fatigue when walking and running. The Veteran denied having pain, and an x-ray of the knees was normal. In November 2006, the Veteran’s knees were assessed to be normal by x-ray and examination, and the treatment provider noted that her history was not suggestive of an anatomic condition. 

The Veteran was afforded a VA examination in June 2017 to assess the nature and etiology of her claimed bilateral knee disability. The examiner conducted an in-person examination and reviewed the Veteran’s claims file. Pursuant to this examination, the examiner noted that the Veteran does not have a current diagnosis of the knees. The Veteran did not report any knee problems, and she conceded not having sought any care for her knees. The examiner stated that the Veteran’s knee examination was unremarkable. The examiner acknowledged that the Veteran’s service treatment records are positive for patellofemoral syndrome, but stated that a general medical examination after separation from service was negative for any knee diagnosis, and review of available medical records since separation is negative for any chronic or ongoing knee condition. 

After a review of all the lay and medical evidence of record, the Board finds that the weight of the evidence is against a finding of a current right or left knee disability. As indicated above, while service treatment records do contain complaints, treatment, or diagnoses for knee pain, the record also does not contain any post-service treatment records pertaining to knee pain or knee disorders. To the contrary, the post-service treatment record is silent for any knee complaints or diagnoses, and the June 2017 examiner specifically found no knee pathology. 

Based on the evidence of record, the Board finds that the weight of the evidence demonstrates that the Veteran does not have a current right or left knee disability. For these reasons, the Board finds that a preponderance of the evidence is against the Veteran’s claim of service connection for a bilateral knee disorder must be denied. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not for application. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

The Board recognizes that pain can be considered a disability for VA purposes where there is evidence of functional impairment. See Saunders v. Wilkie, 886 F.3d 1356, 1369 (Fed. Cir. 2018) (holding that pain alone, without an accompanying diagnosis of a present disease, can qualify as a disability). However, despite the Veteran’s reports of pain, she does not contend that her knee pain impairs her earning capacity or otherwise alters the normal working movements of her body. See Mitchell v. Shinseki, 25 Vet. App. 32, 38, 43 (2011) (stating that pain itself does not rise to the level of functional loss). Accordingly, the Board does not find that the Veteran’s pain amounts to a disability for VA purposes.

3. Entitlement to service connection for left lower extremity radiculopathy secondary to degenerative disc disease of the lumbar spine 

4. Entitlement to service connection for right lower extremity radiculopathy secondary to degenerative disc disease of the lumbar spine 

The AOJ found that the Veteran had an in-service event, including an in-service notation of complaints of numbness and tingling in her lower extremities. The requirements of Shedden element (2), in-service incurrence, have been met. Thus, the question in this case is two-fold: whether there is a current disability, and if so, whether a causal relationship or nexus between said disability and service exists.

The Board notes that Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. In the absence of proof of a present disability, there can be no valid claim. Brammer v. Derwinski, 3 Vet. App. 223 (1992). 

In April 2013, the Veteran was afforded a VA back examination. The examiner noted that the Veteran and the claims file were examined. The Veteran reported intermittent back pain since service. Shooting pain to the bilateral lower extremities was denied, though she reported her legs go numb daily for up to a half hour. Pertinently, based on testing, the examiner found that the Veteran did not have a back diagnosis. Furthermore, sensory examination revealed that the Veteran had no radicular pain or any other signs or symptoms due to radiculopathy. In this regard, the examiner stated that x-rays showed a normal back and that testing showed no limitations in range of motion, no tenderness, and no evidence of pain. 

The Veteran was afforded another VA examination in June 2017. The examiner reviewed the entire claims file, including the Veteran’s medical record, and conducted an in-person examination. At this examination, the Veteran was diagnosed with degenerative disc disease of the lumbar spine. The Veteran reported constant back pain radiating into her knees. However, numbness and tingling into the lower extremities was denied, and pertinently, the examiner noted that neurological testing – including sensory motor and deep tendon reflexes – were normal. The examiner clearly states that there is no evidence that the Veteran has radiculopathy or any other neurological disorder of the lower extremities. 

The Veteran was again afforded a VA back examination in February 2018. The examiner notes having reviewed the entire claims file, including the Veteran’s medical record, and having conducted an in-person examination. The Veteran’s diagnosis of degenerative disc disease of the lumbar spine was confirmed, and it was noted that she was first diagnosed with the disability in 2015. The Veteran reported chronic lower back pain, and intermittent pain from her back to her thighs and knees. Pain to the lower legs or feet was denied. Reflex examination was normal, as were sensory examination and leg raising tests. Significantly, the examiner indicated that the Veteran has neither radicular pain nor any other signs or symptoms of radiculopathy. Furthermore, the examiner specifically stated that the Veteran’s report of intermittent radiation of pain, tingling and burning to the knees is subjective, and that there is no diagnosis of radiculopathy based on normal lower extremity strength, sensation, reflexes and negative SLR testing. The examiner also addressed a January 2016 emergency room record the Veteran references in support of her claim, and pointed out that said note shows normal strength and sensation in the lower extremities. Finally, the examiner specified that a diagnosis of radiculopathy is based on sensory loss or dermatone, loss of strength in muscles innervated by a nerve root, decrease in reflexes and positive SLR testing – which were not present at this examination. 

Post service treatment records reflect that in January 2016, the Veteran reported significant back pain with lower extremity radicular pain. The Veteran was given a provisional diagnosis of low back pain. Also in January 2016, the Veteran is shown to have presented to the emergency department with complaints of low back pain and sciatica. Specifically, the Veteran reported her symptoms included sharp low back pain radiating into the glut and down her right leg. Specifically, the provider indicated that the Veteran had no strength or sensory loss, no change in bowel or bladder function, and no dysuria or hematuria. A sensory examination was intact. The Board acknowledges that the Veteran received an ED diagnosis of sciatica. However, it was specified that the Veteran’s complaints were acute. 

After a review of all the lay and medical evidence of record, the Board finds that the weight of the evidence is against a finding of a current right or left lower extremity radiculopathy. As indicated above, while service treatment records do contain complaints, treatment, or diagnoses for back pain, the record also does not contain any post-service treatment records diagnosing the Veteran with right or left lower extremity radiculopathy, with the exception of an emergency department diagnosis of an acute radiculopathy. The provider who made this singular acute diagnosis also indicated that the Veteran had a normal sensory examination. In fact, multiple VA examinations, dated both before and subsequent to the singular emergency department note, which were based on review of the Veteran’s claims file and in-person examination specifically found no bilateral lower extremity pathology. Indeed, the 2018 VA examiner specifically addressed the emergency department diagnosis in finding that the Veteran does not have a diagnosis of left or right lower extremity radiculopathy.

Based on the evidence of record, the Board finds that the weight of the evidence demonstrates that the Veteran does not have a current right or left lower extremity radiculopathy disability, and the claims of service connection for right and left lower extremity radiculopathy must be denied. As the preponderance of the evidence is against the claims, the benefit-of-the-doubt doctrine is not for application. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

5. Entitlement to service connection for residuals of traumatic brain injury (TBI)

The AOJ found that the Veteran had an in-service event, including an injury to the head. The AOJ also found that the Veteran has a current diagnosis of a TBI without residuals, based on a February 2018 VA examination. Thus, the requirements of Shedden elements (1) and (2) are satisfied. The only question in this case is whether a causal relationship or nexus between said disability and service exists.

The Veteran’s STRs indeed reflect that she reported a head injury in an April 2006 Medical Board examination. In her April 2006 report of medical history, she also reported a head injury. However, the associated clinical separation examination reflects that the Veteran’s head, face, neck and scalp were evaluated as normal, as was a neurologic evaluation. 

The Veteran was afforded a VA examination in July 2017 to examine the nature and etiology of her claimed TBI. While the examiner assessed that the Veteran did not have a diagnosis of TBI, symptoms of memory problems and headaches were noted. Though the examiner provided a negative etiological opinion, the Board finds this examination is inadequate for rating purposes, as the rationale is unclear and insufficiently thorough. Thus, it is afforded no probative weight. 

The Veteran was afforded an additional VA examination in February 2018 to examine the nature and etiology of her claimed TBI. The examiner diagnosed the Veteran with a TBI. The Veteran reported suffering a brain injury during deployment, and specifically, that while escaping a mortar attack in a vehicle, an IED blast jolted her inside said vehicle, causing her to hit her head. The Veteran also stated that when she returned to base, she reported a headache, but did not get checked. The Veteran further conveyed concerns about her memory, as well as symptoms of headaches. Significantly, the examiner opined that it is less likely than not that the Veteran has residuals from her injury, based on the usual recovery from a single mild traumatic brain injury caused by either brief loss of consciousness or altered mental status. The examiner further opined that it is less likely than not that the Veteran’s reported cognitive symptoms are related to a mild TBI in service. The examiner points to a December 2017 VA neuropsychological testing opinion, which found that it is highly unlikely that an incident of hitting her head thirteen years ago, without clear loss of consciousness, is contributing to current cognitive difficulties. Finally, the examiner opined that the Veteran’s headache symptoms are less likely than not related to service, because her current headache condition had its onset many years following the in-service injury. Specifically, the onset of headaches has been reported in medical records as May 2016, and first diagnosed as tension headaches in December 2016. 

VA medical records reflect that the first post-service indication of complaint, treatment or diagnosis of a head injury in service is in May 2007 VA medical records. The Veteran reported at that time that she was exposed to an IED in service but did not lose consciousness. TBI screening was negative. In June 2013, the Veteran again underwent neuropsychological testing, which was negative. The Board also acknowledges a May 2017 TBI consult note, which reflects an assessment that the Veteran met the criteria to be put on the VA TBI registry. In addition, the provider stated that the Veteran’s history of injury and course of clinical symptoms are consistent with a diagnosis of TBI sustained during deployment, and that her current neurobehavioral symptoms are most likely due to a combination of deployment, related TBI and behavioral health conditions. 

The Board finds that while an in-service injury and a current diagnosis of TBI without residuals are conceded, the preponderance of the evidence is against a finding that the Veteran has a disability that is etiologically related to service.

In this regard, the Board notes that the most probative medical evidence of record is the February 2018 VA examination, since it is based on a thorough review of the evidence of record, and contains an opinion supported by an adequate rationale. Indeed, the Board finds persuasive the examiner’s rationale that mild TBIs are not typically productive of cognitive difficulties, and that the Veteran’s headaches had their onset many years following separation from service. While acknowledging the May 2017 opinion regarding the Veteran’s TBI, the Board finds that this opinion is unclear and conclusory, as it is not supported by a rationale. Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (factors for assessing the probative value of a medical opinion include the thoroughness and detail of the opinion); see also Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997) (recognizing the Board’s “authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other items of evidence”). 

The Board has carefully considered the lay evidence in this case. While the Board finds the Veteran to be competent, a TBI is a condition that is outside the realm of common knowledge of a lay person. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (lay persons not competent to diagnose cancer). A TBI is not the type of condition that is readily amenable to mere lay diagnosis or probative comment regarding its etiology, as the evidence shows that neurological testing and other specific findings are needed to properly assess and diagnose the disorder. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Woehlaert v. Nicholson, 21 Vet. App. 456 (2007).

In sum, the criteria for service connection for residuals of a TBI have not been met. The claim must be denied. 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

 

CAROLINE B. FLEMING

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD G.C., Associate Counsel